**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adalberto Murillo Garcia, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Mine Safety Appliances Company, et al.,<br><br>Defendants. | No. CV-19-05789-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant Mine Safety Appliances Company, LLC's ("MSA") Motion for Summary Judgment. (Doc. 74.) Plaintiff Adalberto Murillo Garcia filed a Response (Doc. 83), and MSA filed a Reply (Doc. 89). Also before the Court is MSA's Motion to Exclude the Testimony of Plaintiff's expert witness, Mark Cannon. (Doc. 76.) Plaintiff filed a Response (Doc. 85), and MSA filed a Reply (Doc. 88). The Court heard oral argument on April 6, 2023. After reviewing the parties' arguments and the relevant law, the Court will grant MSA's Motion in part for the following reasons.

**I.    BACKGROUND**

This case originated from Plaintiff's work-related fall down a manhole. In June 2018, Plaintiff worked as a laborer when he sustained his injuries. (Docs. 75 at 1; 83 at 2.) While working in an "enclosed underground vault," Plaintiff attempted to create a scaffold by placing a wooden board between two sections of a ladder he was standing on. (Doc. 75 at 1.) Plaintiff was wearing a safety harness designed and manufactured by MSA—the Workman Rescuer SRL-R ("Rescuer"). (*Id.* at 2.) The Rescuer uses a cable-based internal

locking mechanism to stop a worker's fall. (*Id.*; Doc. 83 at 3.) Plaintiff's co-worker handed Plaintiff the wooden board as he began to lose his footing on the ladder. (Doc. 84 at 8.) Plaintiff fell down the manhole, but the Rescuer did not lock up to arrest his fall. (*Id.*)

Plaintiff raises the following claims in his First Amended Complaint: (1) strict product liability; (2) negligence; (3) *res ipsa loquitur*; (4) breach of express warranties; and (5) loss of consortium. (Doc. 1-3 at 15, 20–29.) MSA now moves for summary judgment on all claims and to preclude Plaintiff from recovering punitive damages. (*See* Doc. 74 at 9.) In his Response, Plaintiff concedes his claims for relief under negligence (failure to warn), *res ipsa loquitor*, and breach of express warranties. (Doc. 83 at 17.) Plaintiff also no longer seeks punitive damages. (*Id.* at 18.) The Court will therefore address only Plaintiff's claims for strict product liability and negligence, recognizing that Plaintiff's loss of consortium claim is tied to the viability of his other claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* at 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the non-movant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the non-movant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The non-movant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the non-movant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

### III. DISCUSSION

When sitting in diversity jurisdiction, federal courts apply federal procedural law and state substantive law. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). Arizona law therefore applies to Plaintiff's claims. *See id.*

#### A. Motion to Exclude

The Court will first address whether to exclude Mark Cannon's opinions because they may inform the Court's summary judgment analysis. MSA argues Cannon's engineering expert opinions are unreliable and should be excluded because they were based on a misidentification of the Rescuer's locking system. (Doc. 76 at 9–10.) MSA

specifically points out that Cannon's theory of "skipping" as a design defect is inconsistent with how the Rescuer actually operates. (*Id.* at 11.) MSA also argues Cannon's opinions are inadmissible under Federal Rule of Evidence 702 because "he conducted no testing of his own" and relied on "the incorrect design to form the basis of his causation opinion." (*Id.* at 13.) MSA describes Cannon's opinion as speculative and inadmissible because he admitted that Plaintiff's fall height could not be determined "within any degree of certainty, and fall height is essential to his calculation of fall speed." (*Id.* at 15–16.)

Plaintiff acknowledges that Cannon's initial report described a locking device that differed from the Rescuer in how the pawls rotate to engage the locking mechanism. (*See* Doc. 85 at 6.) But Plaintiff contends that Cannon's description of the Rescuer was based on MSA's principal engineer's description. (*Id.* at 6–7.) Cannon also compiled a rebuttal report, in which he opined that his previous reliance on MSA's engineer's description and the actual design of the Rescuer's internal components "is similar" and thus did not change any of his opinions. (Doc. 84-1 at 60–61.) Plaintiff also points to Cannon's deposition testimony, in which he testified that while the original mechanism he identified in his original report differed from mechanism in the Rescuer, his opinions and analysis remained the same. (*Id.* at 70–71.)

> Rule 702 provides:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

"The Court acts as a gatekeeper to ensure the proffered testimony is both relevant and reliable." *Clayton v. Heil Co. Inc.*, No. CV-19-04724-PHX-GMS, 2022 WL 17404792, at *2 (D. Ariz. Dec. 2, 2022) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)). The Court "should not exclude opinions merely because they are impeachable."

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013); *see also* Fed. R. Evid. 702, cmt. 2000 amendment ("[P]roponents . . . only have to demonstrate by a preponderance of evidence that their opinions are reliable.").

The core of MSA's first argument is that Cannon lacks specialized knowledge, and his opinion should be excluded, because his report described a different machine and locking mechanism than the Rescuer. The Court finds that Cannon's rebuttal report and deposition testimony are sufficient to cure his mistaken reference to a slightly different locking design. Cannon ultimately opined that the differences between the type of design in his initial and rebuttal reports (which addressed the Rescuer) did not change ultimate opinion. MSA did not dispute Cannon's opinions within the context of that rebuttal report. The Court thus finds that Cannon has sufficient specialized knowledge to avoid exclusion of his opinion.

MSA's second argument focuses on whether Cannon's opinion as to causation should be admissible based on Cannon not performing his own independent testing of the Rescuer. (Doc. 76 at 12–13.) MSA primarily argues that "[t]here is no evidence of a skip occurring at all during this incident." (*Id.* at 13.) Cannon relies on the joint testing (*see* Doc. 75 at 4 ¶ 15) to explain that a skip can occur at a pull speed that should cause the device to catch, the probability of a skip increases as the amount of extended cable increases, and a skip can result in a free fall. (*See* Doc. 85-1 at 34–57.) Cannon's reports contain detailed explanations of Plaintiff's potential fall height, the Rescuer's ability to lock relative to pull speed, and how skipping could have occurred. (*See, e.g.*, Docs. 84-1 at 51–54, 60–67.) MSA presents arguments to contradict Cannon's conclusions, but not the principles of physics Cannon presents to support those conclusions. Even in the absence of Cannon's "own testing" the Court finds Cannon's opinion sufficiently reliable, and therefore should not be excluded. *See* Fed. R. Evid. 702, cmt. 2000 amendment.

MSA's third argument addresses a substantive dispute of fact to be addressed later in this Order. *See infra* Sec. III(B)(2). Cannon's rebuttal report laid out the basis for his fall height calculation. (*See* 75-1 at 146.) Cannon discussed Plaintiff's deposition

testimony, where he claimed he was twelve feet from the bottom of the manhole. (*Id.*) Unsure of whether Plaintiff's description was from his feet to the ground or from his eye-height to the ground, Cannon calculated the speed of Plaintiff's free fall based on the lower of the two options (estimated distance from Plaintiff's feet to the ground). (*Id.*) When considering the opinion from MSA's expert about the distance in which the Rescuer would lock, and the fall height associated with Plaintiff's testimony, Cannon opined that "it is highly unlikely that [Plaintiff] did not fall fast enough to trigger the locking pawls as intended." (*Id.*) Recognizing that the parties offer different fall clearance distances, *see infra* Sec. III(B)(2), the Court finds that Cannon's opinion is "based on sufficient facts or data." Fed. R. Evid. 702.

Therefore, the Court will deny MSA's Motion to Exclude (Doc. 76) and analyze MSA's Motion for Summary Judgment with the benefit of Cannon's opinions. *See Ellison*, 357 F.3d at 1075.

### B.  Design Defect Claims

Plaintiff brings design defect claims under strict liability and negligence theories. To establish a prima facie case for strict products liability under Arizona law, plaintiffs must show "the product is defective and unreasonably dangerous; the defective condition existed at the time it left defendant's control; and the defective condition is the proximate cause of the plaintiff's injuries." *St. Clair v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA, 2011 WL 5331674, at *4 (D. Ariz. Nov. 7, 2011) (citing *Dietz v. Waller*, 685 P.2d 744, 747 (Ariz. 1984)). Strict products liability claims do "not rest on traditional concepts of fault," meaning plaintiffs need not "prove the defendant was negligent." *Id.* In contrast, to establish negligent design, "the plaintiff 'must prove that the designer or manufacturer acted unreasonably at the time of . . . design of the product.'" *Canning v. Medtronic Inc.*, No. CV-19-04565-PHX-SPL, 2022 WL 1123061, at *4 (D. Ariz. Apr. 14, 2022) (quoting *Gomulka v. Yavapai Mach. & Auto Parts, Inc.*, 745 P.2d 986, 988–89 (Ariz. Ct. App. 1987)). A design defect "arises when the manufacturer has failed to use reasonable care to design its products so as to make it safe for intended uses." *Mather v.*

*Caterpillar Tractor Corp.*, 533 P.2d 717, 719 (Ariz. Ct. App. 1975).

MSA argues summary judgment is appropriate because Plaintiff cannot establish that the Rescuer was defectively designed, or that any defect caused Plaintiff's injuries. (Doc. 74 at 9–10, 14.) MSA relies on the same purported lack of evidence to support its arguments for both strict liability and negligence theories. (*See id.* at 10, 18.) Plaintiff argues the evidence at least establishes issues of material fact to be determined by a jury. (Doc. 83 at 9.)

### 1. The Rescuer's Design

MSA argues summary judgment is appropriate because Plaintiff cannot establish a design defect. Plaintiff contends the Rescuer's design is defective because it permits "skipping"—a term the parties use to describe a phenomenon where the Rescuer's internal components "bounce" rather than engage, which causes the Rescuer not to lock. (*Id.* at 6; Doc. 83 at 5.) Plaintiff cites his deposition testimony where he testified to being "100 percent sure" the Rescuer never locked, and he never felt it try to lock. (Doc. 84-1 at 16.) Plaintiff also cites Cannon's expert opinion that the Rescuer's design allows skipping, which may lead to a potential failure to arrest the user's fall "when a certain amount of cable is extended during use." (*Id.* at 57.) Cannon further opined that Plaintiff's fall resulted from the Rescuer's "skipping and failing to lock as intended." (*Id.*) In its Motion, MSA contends it is "undisputed that the Rescuer locked-up during post-incident testing." (Doc. 74 at 11.) Yet, MSA recognizes that the Rescuer did skip once during that testing. (*Id.*) MSA asserts Plaintiff's evidence is insufficiently speculative and points to contradictory evidence that the Rescuer will lock and arrest within thirty-three inches, independent of whether a skip occurred.[1] (Doc. 89 at 3.)

The Court concludes that Plaintiff has provided sufficient evidence of a design defect to avoid summary judgment. During his deposition, Plaintiff testified that the

---

[1] MSA also argues the Rescuer has no design defects because regardless of potential skipping, the Rescuer will still lock up within a certain fall distance. (*See* Doc. 74 at 12.) Additionally, MSA asserts Plaintiff had an insufficient amount of unobstructed clearance for the Rescuer to function as designed. (*Id.* at 13–14.) The Court will address below whether genuine issues of material fact remain as to whether Plaintiff's fall path was obstructed, and whether Plaintiff had sufficient fall clearance.

- 7 -

Rescuer was set correctly, and being used correctly, when he fell. Plaintiff also testified that he never felt the Rescuer lock while he was falling. Cannon opined that the Rescuer's design permits skipping and arrest failure, which could cause a user to free fall. MSA offered an abundance of conflicting evidence to challenge Plaintiff's testimony and Cannon's opinions. That conflicting evidence highlights the issues of material fact that remain in dispute—whether Plaintiff's evidence is sufficient to establish that the Rescuer has a design defect is for the jury to decide.

### 2.     Causation

MSA also argues summary judgment is appropriate because Plaintiff cannot establish that the Rescuer was the proximate cause of Plaintiff's injuries. (Doc. 74 at 14.) MSA asserts Plaintiff misused the Rescuer by failing to follow warnings and instructions and that misuse solely caused his injuries. (*Id.*) Arizona law provides the following affirmative defense to products liability actions:

> The proximate cause of the incident giving rise to the action was a use or consumption of the product that was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable or was contrary to any express and adequate instructions or warnings appearing on or attached to the product or on its original container or wrapping, if the intended consumer knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings.

A.R.S. § 12-683(3). The Rescuer's user instructions state, "[a]lways remove obstructions below the work area to ensure a clear fall path. The minimum recommended fall clearance is . . . 8 ft (2.4m) plus free fall. The maximum allowable free fall is 2 ft." (Doc. 75-1 at 113.) MSA asserts Plaintiff failed to follow the Rescuer's instructions by having an obstructed fall path and inadequate fall clearance. (Doc. 74 at 15–16.)

The parties present conflicting evidence as to whether the manhole was obstructed and how much fall clearance Plaintiff had. MSA contends all evidence shows that Plaintiff's fall path was obstructed, and that inside the manhole were "cross brace holding pipes, two ladders with ladder rungs and rails, and pipes on both sides of the fall path." (*Id.* at 15.) Citing its statement of facts, MSA states Plaintiff's "fall was obstructed, and he stated that during his fall, his leg hit a 'big thing sticking up.'" (*Id.* at 14; Doc. 75 at 3

¶ 11.) Plaintiff responds that the ladders were being used consistent with the Rescuer's user instructions, and that the pipes were adjacent to, but not under, Plaintiff when he fell. (Doc. 83 at 13.) Plaintiff states he did hit something, but then fell directly to the bottom of the manhole. (*Id.*)

The Court notes that MSA did not cite Plaintiff's entire statement to support its contention that "[Plaintiff's] fall was undisputedly obstructed." (Doc. 74 at 15.) Plaintiff's June 27, 2018 statement at the hospital states: "*When I hit the bottom my left foot hit the big thing sticking up* and bent my foot back and slammed my knee into the pipe." (Doc. 75-1 at 140) (emphasis added). Plaintiff's statement does not support MSA's contention. The Court also notes that in the photograph MSA provides, the ladders are being used in a similar fashion as the illustrative figures from the Rescuer's user instructions. (*See* Docs. 75 at 3; Doc. 75-1 at 114.) That photograph supports Plaintiff's description that the objects in the manhole were next to Plaintiff as he fell, but not below him.

MSA also contends Plaintiff did not have enough fall clearance when he fell. (Doc. 74 at 16.) Neither party provided a certain, irrefutable distance between where Plaintiff tried to install the scaffolding and the bottom of the manhole. MSA's expert opined that based on Plaintiff's height and the length of the ladders, Plaintiff must have been between four to five feet from the bottom of the manhole. (*Id.*) MSA cites Plaintiff's deposition testimony, where Plaintiff testified that the middle of the manhole was about seven or eight feet from the floor to assert that Plaintiff's self-serving statements represent the only evidence to rebut "the undisputed evidence." (Docs. 74 at 16–17; 75 at 2; 75-1 at 91.) Plaintiff counters that the Rescuer's user instructions contain only a recommendation, not a requirement, for minimum fall distance (*see* Doc. 75-1 at 113), and that he testified to being twelve or thirteen feet from the bottom when he began to fall. (Doc. 84-1 at 16.)

The evidence cited by the parties demonstrates that there is a dispute of material fact regarding how much fall clearance Plaintiff had. Both MSA and Plaintiff cite circumstantial evidence based on the length of the ladders, descriptions of the manhole, and Plaintiff's height to suggest the distance between Plaintiff's feet and the ground. Each

party's experts reached different conclusions based in part by the same deposition testimony provided by Plaintiff. The Court thus concludes that material facts remain in dispute as to the adequacy of Plaintiff's fall clearance.

The Court finds that genuine issues of material fact exist as to whether: (1) the Rescuer was defectively designed; (2) Plaintiff's fall was obstructed/unobstructed; and (3) Plaintiff had sufficient fall clearance. As such, the Court will deny MSA's Motion for Summary Judgment as to the strict products liability, negligence[2], and loss of consortium claims.[3] The Court will grant judgment in MSA's favor as to Plaintiff's claims for negligence (failure to warn), *res ipsa loquitor*, and breach of express warranties. (*See* Doc. 83 at 17.)

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** denying MSA's Motion to Exclude the Testimony of Mark Cannon. (Doc. 76.)

**IT IS ORDERED** granting in part Defendant's Motion for Summary Judgment (Doc. 74) as to the claims of negligence (failure to warn), *res ipsa loquitor*, breach of express warranties, and punitive damages. The Motion is denied as to the strict products liability, negligent design, and loss of consortium claims.

Dated this 6th day of April, 2023.

Honorable Susan M. Brnovich
United States District Judge

---

[2] MSA argued that Plaintiff could not establish a breach of duty because there was no design defect, and Plaintiff could not establish causation given that the fall was obstructed. (Doc. 74 at 18.)
[3] Plaintiff's loss of consortium claim is derivative of Plaintiff's other claims and will similarly survive summary judgment. *See Martin v. Staheli*, 457 P.3d 53, 58 (Ariz. Ct. App. 2019).